AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

for the

Western District of Arkansas

DEC - 6 2019

DOUGLAS F. YOUNG, Clerk

By                    Deputy Clerk

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Electronic Evidence from the Devices in the custody of the FBI at 75 N. East Ave., Suite 301, Fayetteville, AR, more particularly described in Attachment A

)
)
)
)
)
)

Case No. FI CM 131

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Western _____ District of _____ Arkansas _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. 1028A | Aggravated Identity Theft |
| 18 U.S.C. 1341,1343-44, 1349 | Wire/Mail/Bank Fraud and Conspiracy |
| 18 U.S.C. 1957 | Money Laundering |

The application is based on these facts:

See the attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Alan Lee, Federal Bureau of Investigation

*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/6/19

*Judge's signature*

City and state: Fayetteville, Arkansas

Chief U.S. Magistrate Erin L. Wiedemann

*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

IN THE MATTER OF THE SEARCH OF )
ELECTRONIC EVIDENCE FROM DEVICES )
CURRENTLY IN THE CUSTODY OF THE )
FBI AT 75 N. EAST AVE., SUITE 301 ) CASE NO. _____
FAYETTEVILLE, AR 72701 )
MORE PARTICULARLY DESCRIBED IN )
ATTACHMENT "A" )

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Alan Lee, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.     I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and have been employed as such for over twenty years. I am currently assigned to the Little Rock Office, Fayetteville Resident Agency of the FBI, and have been since August of 2014. From October of 2004 to August of 2014, I was assigned to the Los Angeles Office of the FBI and prior to October 2004, I was assigned to the Chicago Office of the FBI. In connection with my official FBI duties, I investigate federal criminal violations, including, but not limited to, white collar crime, money laundering, weapons related crimes, human trafficking, and public corruption.

2.     I make this affidavit in support of an application for a warrant to search the following items that have been collected in the investigation of Jonathan Terry and Joshua Terry to date: a Hitachi Harddrive Model: HTS541680J9SA00 S/N: SGE0G20E, an Apple Iphone, Model: A1533, IMEI: 358752053510982, a Black Samsung cellular telephone with a cracked screen, Model: XT1609, IMEI: 354142073026801, Black Samsung cellular telephone Model: SM-J260A, S/N: RF8M50ELZ9V to law enforcement on November 19, 2019, two Scandisk Cruzer thumbdrives (one 2GB, the second 64GB), Sim card 8901260321953048424F, 085629 found on Jonathan Terry at the time of his arrest, and the

white and silver computer tablet with a cracked screen found by the Arkansas State Police on October 12, 2019 (hereinafter referred to collectively as the "Devices"). These Devices are all now located at the Fayetteville offices of the FBI AT 75 N. East Avenue, Suite 301 in Fayetteville, Arkansas located in Washington County, within the Fayetteville Division of the Western District of Arkansas. I have probable cause to believe that contraband, evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 1028A (Aggravated Identity Theft), 1341 (Mail Fraud), 1343 (Wire Fraud), 1344 (Bank Fraud), 1957 (Money Laundering), and 1349 (Conspiracy to Commit Mail/Wire/Bank Fraud), are located within these devices. I submit this application and affidavit in support of a search warrant authorizing a search of these Devices, as further described and depicted in Attachment A, which is incorporated herein by reference.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

3.      The property to be searched is:

A.      a Hitachi Harddrive Model: HTS541680J9SA00 S/N: SGE0G20E was seized by the Madison County Sheriff's Office after the execution of a search warrant at the residence of TERRY's mother at 424 Madison 4225, Combs, Arkansas 72721.

B.      a white and silver computer tablet with a cracked screen and any attachments which was seized by the Arkansas State Police on October 12, 2019. (pictured below)



C.   two Scandisk Cruzer thumbdrives (one 2GB, the second 64GB) found on TERRY's person search incident to his arrest on November 19, 2019.

D.   a SIM card with identifying number 8901260321953048424F, 085629 found on TERRY's person search incident to his arrest on November 19, 2019.

E.   Black Samsung cellular telephone Model: SM-J260A, S/N: RF8M50ELZ9V provided to the Fayetteville Police Department on November 19, 2019, by L.S.

F.   Black Samsung cellular telephone with a cracked screen, Model: XT1609, IMEI: 354142073026801.

G.   Apple Iphone, Model: A1533, IMEI: 358752053510982.

The applied-for warrant would authorize the forensic examination of these Devices for the purpose of identifying electronically stored data particularly described in Attachment B as contraband, evidence, fruits, and instrumentalities of a crime.

4.   The statements contained in this affidavit are based on information that I have received, directly or indirectly, from other law enforcement agents, information gathered from the results of physical surveillance, the results of lawful process issued in this independent investigation, and my experience, training and background as a Special Agent with the FBI. Because this affidavit is being submitted for the limited purpose of securing authorization for the requested search warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits and/or instrumentalities of violations of Titles 18 U.S.C. §§ 1028A, 1341, 1343, 1344, 1957 and 1349 are presently located on the Devices listed in Attachment A.

## BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE

5.   Beginning in September of 2019, a task force composed of Internal Revenue Service, Criminal Investigation Agents and FBI Special Agents ("Task Force") received information Jonathan

Terry (hereinafter referred to as "TERRY") was opening accounts at TD Ameritrade and Fidelity investment and shortly after attempting to make large ACH opening deposit transfers into those newly opened accounts. The transfers into the accounts were unauthorized and came from individuals who reported to law enforcement that these transfers from their accounts were without their knowledge or consent. TERRY was arrested on November 19, 2019 for an active state warrant for absconding and is currently incarcerated in Washington County.

6. The Task Force learned that Deputy Clint Ham from the Madison County Sheriff's Office had received complaints of mail theft in Madison County. Agents, including the undersigned, contacted Officer Ham who informed us that an individual, M.M.,[1] thought his mail was being stolen. M.M. put junk mail in his mail box as a test to see if his mail was being stolen and it was gone from the mailbox shortly thereafter. Officer Ham advised M.M. to put a game camera up to attempt to catch photographic evidence of the theft. M.M. and his neighbor did just that and obtained photos of TERRY pulling up in a car in front of the mailbox and stealing mail. The car was not registered to TERRY but to another individual.

7. Based upon this and other evidence, Deputy Ham obtained a state search warrant to look for stolen mail from Arkansas state Circuit Judge Joanna Taylor at the residence of Artis McCarver and Rhonda Bunch, the mother of TERRY, located at 424 Madison 4225, Combs, Arkansas 72721. This is the address TERRY listed with his state probation and parole office.

8. Deputy Ham executed the search warrant on that residence and found large quantities of stolen mail and a printer with check paper in it. The Madison County Sheriff's office also found a hard drive, a Hitachi Harddrive Model: HTS541680J9SA00 S/N: SGE0G20E, printer and associated electronics, in that residence and seized those after receiving authorization from Judge Taylor. During

---

1 The identity of the complaining witnesses/victims identified by initials in this affidavit are known to law enforcement but are being withheld from the search warrant affidavit to prevent their identity from becoming known once this matter is unsealed pursuant to the local rules of this district. These are not anonymous sources, but rather known individuals/entities who made a report to law enforcement and as such are subject to criminal penalties in the event they have filed a false police report. These individuals have no known motive to lie to law enforcement except and unless the Court considers their potential refund of the contested charges.

the execution of that warrant, Deputy Ham interviewed Rhonda Bunch who claimed that the mail and printer, and electronics belonged to TERRY. TERRY was not present during the search warrant to be interviewed.

9.    The Task Force has also been able to request and receive information and documents from TD Ameritrade and Fidelity Investments ("Fidelity") in this investigation. Responsive documents show that online accounts have been opened up in the name of TERRY, Rhonda Bunch, Artis McCarver, Joshua Terry[2], Joshua Waits and others. Similar to the complaints that initated the law enforcement investigation into TERRY, the initial deposits into those newly opened accounts with TD Ameritrade and Fidelity were made with fraudulent transfers from other victims' bank accounts.

10.    For example, two fraudulent accounts at TD Ameritrade were opened in the names of Joshua Terry and Joshua Waits. An account ending in #7195 opened in the name of Joshua Waits listed an address of 4225 Madison 424, Elkins AR (which appears to be a transposed address from the one occupied by Rhonda Bunch that was the subject of the Madison County Sheriff's Office search warrant above).    In opening that account, the perpetrator of this crime used an e-mail address of jonathan01311985@gmail.com and a phone number of (479) 879-4325.

11.    Additionally, a TD Ameritrade account ending in #4068 was opened in the name of Joshua Terry and listed an address of 11782 Strains Community Rd., Fayetteville, Arkansas. Similarly, in opening this account, the perpetrator of this crime used an e-mail address of jonathanTerry01311985@gmail.com and a phone number of (479) 879-4325. It should be noted that according to driver license's records, TERRY's date of birth is 01/31/1985, this establishes a connection to the e-mail address listed on the TD Ameritrade accounts. Additionally, according to subpoenaed

---

2 TERRY's brother.

information received by Officer Mixson of the Fayetteville Police Department from Verizon, phone number 479-879-4325 is subscribed to Jonathon Terry.

12. Both of the two accounts listed in the preceding paragraphs, were funded with \$275,000 in transfers from O.I.'s bank account at Bank of Fayetteville. [3] The account owner, J.S., was interviewed and did not authorize the transfer and was uncertain how his account number was even obtained. J.S. immediately contacted Bank of Fayetteville and had his account closed after he realized it was compromised. After this account was closed, an attempt was made to pay a city utility bill at 2916 East Wyman Road in Fayetteville, Arkansas, in the amount of \$500, an address that TERRY was known to occupy during the course of this investigation. The utility company lists an individual *other* than TERRY or any of the other suspects named herein as the account holder for that address.

13. A contact phone number of (479) 879-4325 was entered with the \$500 payment on the utility bill for that residence. City utility paperwork noted the payment also originated from this number. It should be noted that another fraudulent TD Ameritrade account ending in #1179 was opened in the name of "Jonathon"[4] Terry listing the phone number of (479) 879-4325 and the address of 11782 Strain Community Rd, Fayetteville, Arkansas- the same address used to open account ending in #4068 in the name of Joshua Terry referenced above.

14. On October 10, 2019, CW1 was interviewed while he/she was incarcerated on unrelated charges. CW1 stated that he/she knew that TERRY was opening fraudulent TD Ameritrade and Fidelity accounts in TERRY's name and in other individual's names. CW1 also reported that TERRY stole mail to obtain bank account information and then attempted to transfer funds from victim's accounts to the TD Ameritrade and Fidelity accounts that he set up. CW1 said TERRY would do this using his phone and a laptop computer. CW1 reported that TERRY uses two phone numbers, one being (479) 879-4325. CW1 said TERRY was staying with another individual who owned the premises at 2916 East Wyman

---

3 O.I. is a local corporation and J.S. is the individual responsible for the account and business.
4 The undersigned wishes to highlight to the Court that this spelling of the first name is different than that known to law enforcement for TERRY.

Road in Fayetteville [5]. CW1 stated that this other individual allowed TERRY to stay there with him because TERRY paid his utilities.

15. CW1 reported that TERRY normally stayed in the back house or in the camper.[6] It should be noted that CW1 was incentivized to speak to investigators because CW1 was requesting the Government to reach out to local prosecuting entities to obtain a court appearance for CW1. After visiting with CW1, a court date was set for him/her.

16. CW1 said that he/she is aware that TERRY opened an account in the name of Joshua Terry, who is the brother of TERRY. CW1 stated that Joshua Terry did not authorize TERRY to open the account in his name. CW1 said TERRY took photographs on his phone of individuals' driver's licenses and other personal information without their knowledge in order to use this information later without their consent. CW1 was questioned about a $5,000 check that was attempted to be sent to him/her from TD Ameritrade account #1179 set up in the name of TERRY. CW1 claimed to be unaware of this but admitted the address the check was to be sent to was an address associated with him/her. CW1 also said on one occasion CW1 was sleeping in the back cab of a truck leased or rented by TERRY. When CW1 awoke, CW1 noticed that TERRY was driving around stealing mail.

17. On the evening of October 12, 2019 into the early morning hours October 13, 2019, a vehicle was stopped by the Arkansas Highway Patrol. Trooper Evans approached the vehicle, and an individual who was laid down in the back seat of the car, ran away from the traffic stop on foot. Trooper Evans then questioned the driver, Rhonda Bunch ("Bunch"), about who ran away. Bunch admitted it was TERRY. While conducting an inventory search of the vehicle, Trooper Evans found a pile of stolen

---

5 CW1 says 2619 during the interview but says he/she may have the numbers wrong and initially identified the address of TERRY as "2619 Wyman Road" with apparently the numbers on the address of the premises transposed. CW1 correctly states the name of the owner of the 2916 East Wyman Road in Fayetteville and describes the property just as the Agent discovered it.

6 The undersigned drove by 2916 East Wyman Road in Fayetteville and observed a residence towards the front of the property and another residence in the back, just the way CW1 described.

mail and a white and silver computer tablet with a cracked screen in the back of Bunch's car. Bunch stated that the mail was put in the car by TERRY prior to her getting in the car. She said that when TERRY ran, he left the mail in the car. Bunch also said the white and silver computer tablet with a cracked screen belonged to TERRY.

18. On November 19, 2019, Fayetteville Police conducted surveillance at 1101 S. Curtis Avenue, Apartment C17 in Fayetteville, Arkansas. During their surveillance they observed Joshua Terry (TERRY's brother) exit what they thought was a stolen vehicle and the enter Apartment C17. Later, Joshua Terry exited that apartment and was detained by Fayetteville Police for an outstanding warrant. The resident of Apartment C17, L.S., was then questioned by Fayetteville Police and admitted TERRY was currently in her apartment and was attempting to flee out a back window. At that time, a Fayetteville Police Officer was positioned in the back of the apartment complex and observed TERRY flee out the back window and a foot pursuit ensued. TERRY had an outstanding state warrant. TERRY was caught and arrested and arrested that night. During a search incident to TERRY's arrest two Scandisk Cruzer thumbdrives (one 2GB, the second 64GB), and a Sim card numbered 8901260321953048424F, 085629 were found and seized.

19. Fayetteville Police questioned L.S. further that night of November 19, 2019. In response to police questioning, L.S. turned over a black Samsung cellular telephone that she stated was left in her apartment by TERRY.

20. Fayetteville Police then searched the vehicle that Joshua Terry was seen exiting pursuant to a state search waiver on file for him as he was on probation at the time. A Black Samsung cellular telephone with a cracked screen, Model: XT1609, IMEI: 354142073026801 and an Apple Iphone, Model: A1533, IMEI: 358752053510982 along with three ledgers were found and seized by Fayetteville Police. Joshua Terry later told investigators that Jonathan Terry was in the possible reported stolen vehicle with him.

21. After being placed under arrest, TERRY was mirandized and interviewed on two occasions. On the first occasion, TERRY denied any criminal conduct. On the second interview, which

occurred several days later, TERRY admitted to stealing mail but insisted he was working with others to "wash" money through a Fidelity account set up in his name, wash checks and redeposit them, and transfer funds using the account number. TERRY listed other individuals that he was working with and expressed concern that he was going to take the "heat" for the activities of others.

22.     The Devices collected during this investigation and currently in the lawful possession of the FBI at 75 N. East Avenue, Suite 301, in Fayetteville, Arkansas are as follows:

A.     a Hitachi Harddrive Model: HTS541680J9SA00 S/N: SGE0G20E was seized by the Madison County Sheriff's Office after the execution of a search warrant at the residence of TERRY's mother at 424 Madison 4225, Combs, Arkansas 72721. *See* ¶ 8 herein.

B.     a white and silver computer tablet with a cracked screen and any attachments which was seized by the Arkansas State Police on October 12, 2019. *See* ¶ 17 herein and photo in Attachment A for further identification.

C.     two Scandisk Cruzer thumbdrives (one 2GB, the second 64GB) found on TERRY's person search incident to his arrest on November 19, 2019. *See* ¶ 18 herein.

D.     a SIM card with identifying number 8901260321953048424F, 085629 found on TERRY's person search incident to his arrest on November 19, 2019. *See* ¶ 18 herein.

E.     Black Samsung cellular telephone Model: SM-J260A, S/N: RF8M50ELZ9V provided to the Fayetteville Police Department on November 19, 2019, by L.S. *See* ¶ 19 herein.

F.     Black Samsung cellular telephone with a cracked screen, Model: XT1609, IMEI: 354142073026801. *See* ¶ 20 herein.

G.     Apple Iphone, Model: A1533, IMEI: 358752053510982. *See* ¶ 20 herein.

While the FBI might already have all necessary authority to examine the Devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws.

23. The Devices are all currently in storage at the FBI field office at 75 N. East Avenue, Suite 301 in Fayetteville, Arkansas which is located within the Fayetteville Division of the Western District of Arkansas. In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the FBI.

## TRAINING AND EXPERIENCE

24. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium

to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that

antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers,

each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

25.    In my training and experience, examining data stored on Devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device and in this case in particular, evidence as to who may have conducted the financial transactions that the FBI is currently investigating.

26.    Additionally, based upon my training, education, and experience in conducting white collar investigations in particular, I am aware that persons who engage in this type of sophisticated activity with stolen identities generally keep records, notes, receipts, ledgers, logs, transaction amounts, and other similar documentation of their financial activities. They also utilize computers, computer tablets such as iPads, and cellular phones to engage in this conduct, including through emails, instant messaging, text messaging and calls, and maintaining inventory lists for buyers, sellers, and recipients of items gained through the criminal conduct. Targets who use stolen personally identifying information to apply for lines of credit and to purchase goods for re-sale will frequently utilize electronic devices, such as phones, tablets, and computers to assist in the fraudulent scheme, to track deposits and shipments,

and to coordinate the transfer of funds. The evidence regarding who made those transfers and utilized the devices, including text messages, email, and information from downloaded apps, can be found on available memory of removable storage devices, hard drives, and factory installed memory on phones.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

27.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

28.     There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

- a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

- b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

29. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or

other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

30. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

31. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

32. As part of this request, I am requesting authorization to the devices listed in Attachment A for the information referenced in Attachment B relating to violations of Title 18 U.S.C. §§ 1028A (Aggravated Identity Theft), 1341 (Mail Fraud), 1343 (Wire Fraud), 1344 (Bank Fraud), 1957 (Money Laundering) and 1349 (Conspiracy to Commit Mail/Wire/Bank Fraud) involving TERRY, Joshua Terry, Rhonda Bunch, Artis McCarver and others identified above, and any unknown, or yet to be identified, subjects.

33. Based on the aforementioned factual information, I respectfully submit that this Affidavit supports probable cause for the attached search warrant authorizing the search of the Devices described in Attachment A, examination of any computers or electronic devices found therein to seek the items listed in Attachment B.

Respectfully Submitted,

Special Agent Alan Lee
Federal Bureau of Investigation

Subscribed and sworn to before me on December ___, 2019:

HON. ERIN L. WIEDEMANN
Chief United States Magistrate Judge

## ATTACHMENT A

### DESCRIPTION OF PROPERTY TO BE SEARCHED

The property to be searched is:

A. a Hitachi Harddrive Model: HTS541680J9SA00 S/N: SGE0G20E was seized by the Madison

County Sheriff's Office after the execution of a search warrant at 424 Madison 4225, Combs,

Arkansas 72721.

B. a white and silver computer tablet with a cracked screen and any attachments which was seized by

the Arkansas State Police on October 12, 2019. (pictured below)



C. two Scandisk Cruzer thumbdrives (one 2GB, the second 64GB) found on TERRY's person search

incident to his arrest on November 19, 2019.

D. a SIM card with identifying number 8901260321953048424F, 085629 found on TERRY's person

search incident to his arrest on November 19, 2019.

E. Black Samsung cellular telephone Model: SM-J260A, S/N: RF8M50ELZ9V provided to the

Fayetteville Police Department on November 19, 2019, by L.S.

F. Black Samsung cellular telephone with a cracked screen, Model: XT1609, IMEI:

354142073026801.

G. Apple Iphone, Model: A1533, IMEI: 358752053510982. See ¶ 20 herein.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the

electronically stored information described in Attachment B.

## ATTACHMENT B

All evidence and records located on the Devices listed in Attachment A that relate to violations of Title

18 U.S.C. §§ 1028A (Aggravated Identity Theft), 1341 (Mail Fraud), 1343 (Wire Fraud), 1344 (Bank

Fraud), 1957 (Money Laundering) and 1349 (Conspiracy to Commit Mail/Wire/Bank Fraud) and also

evidence of user attribution for the Devices including, but not limited to:

1.  Documents, receipts, notes, financial ledgers, memoranda, buyer and seller lists, and correspondence used to transfer funds online, including but not limited to ledgers, invoices, financial documents, and the receipt of funds.

2.  Receipts, bank statements, money transfers, letters of credit, checks, credit applications, and other items evidencing the obtaining, secreting, transfer and concealment of assets, and the obtaining, secreting, transfer, concealment and expenditure of money and images of the same.

3.  Income tax returns, W-2 and W-4 forms, receipts, and other documents pertaining to the filing of personal and business tax returns.

4.  Any video/audio recordings and/or electronic communications between TERRY and any other person.

5.  Names, addresses, and personally identifiable information and/or telephone numbers in documents, images, and records;

6.  Records evidencing the use of the Internet Protocol addresses to communicate with **Banks, mail servers, and stock trading companies**, including:

    a. records of Internet Protocol addresses used;

    b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

7.  For these Devices upon which computer data can be recorded, to include cellular smart phones, (hereinafter, "COMPUTER") that is called for by this warrant, or that might contain things otherwise called for by this warrant:

    a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

e.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

f.  evidence of the times the COMPUTER was used;

g.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

h.  contextual information necessary to understand the evidence described in this attachment.

8.  Agents are authorized to make an image of hard drives or other devices capable of storing digital media and analyze them to retrieve the listed information. Additionally, this warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form and any photographic form.